Wendell **LYONS; Donald Tate; Robert L. Claiborne; Rosevelt Willson,** Plaintiffs–Appellants,

v.

Gordon R. **ENGLAND,*** Secretary of the Navy, Defendant–Appellee.

No. 00–55343.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 10, 2001.

Withdrawn from Submission Nov. 14, 2001.

Resubmitted Oct. 2, 2002.

Filed Oct. 9, 2002.

---

* Gordon R. England is substituted for his predecessor John H. Dalton. Fed. R.App. P. 43(c)(2).

Lynn H. Ball, San Diego, CA, for the appellants.

Donald F. Shanahan, Assistant United States Attorney, San Diego, CA, for the appellee.

Before: B. FLETCHER, T.G. NELSON, and BERZON, Circuit Judges.

BETTY B. FLETCHER, Circuit Judge.

Plaintiffs-appellants Wendell Lyons, Donald Tate, Robert Claiborne, and Roosevelt Willson appeal a grant of summary judgment in favor of defendant-appellee Gordon R. England, Secretary of the Navy, against appellants' claims that appellee violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, during the course of their employment at the Naval Aviation Depot North Island, San Diego, California ("NADNI"). Appellants claim that appellee subjected African–American male employees at NADNI to unlawful disparate treatment by denying them favorable work assignments and job promotions over a period of several consecutive years. Appellant Tate additionally claims that appellee retaliated against him for filing charges with the Equal Employment Opportunity Commission ("EEOC").

The district court granted summary judgment in favor of appellee on all of the appellants' claims. The court ruled that appellee could not be held liable either for the discriminatory allocation of work assignments occurring outside of the 45–day limitations period in which federal employees must contact an Equal Employment Opportunity ("EEO") counselor regarding their claims, 29 C.F.R. § 1614.105(a)(1), or for management's failure to promote appellants to available positions subsequent to the filing of their EEOC charges. We affirm the district court's ruling that appellants' pre-limitations period claims are time-barred, but we reverse its ruling that appellants failed to exhaust their administrative remedies. With regard to appellants' properly presented failure-to-promote claims arising out of incidents occurring before and after their charges were filed, we reverse summary judgment and remand for trial as to all appellants. However, we affirm the district court's decision to grant summary judgment denying Tate's claim of unlawful retaliation.

## I. BACKGROUND

Appellants are all African–American, male military veterans, each of whom has served for over 30 years at NADNI. Appellants allege that, from 1991 until the filing of their complaint in April 1998, appellee engaged in a pattern or practice of discrimination against African–American

men through discriminatory work assignments and non-selection for promotion to positions at or above the GS–13 level.

In 1991, NADNI underwent a work reorganization, during which employees from the Engineering Department were reassigned to the Production Department, where appellants worked. Before the reorganization, both Tate and Lyons held the position of Program Manager. Appellants allege that, after the reorganization, they were removed to "non-career enhancing jobs" and replaced in their former positions by white males. Neither appellant has since been reinstated to his former managerial status.

Appellee responds that the responsibilities of Program Managers changed after the reorganization from mere tracking and reporting of production before 1991 to extensive product management and worker supervision after 1991. For this reason, appellee alleges that Program Manager positions became GS–13 positions, and appellants ceased to be eligible for them. Regardless, appellants Tate and Lyons continue to hold a GS–12 rating to the present day, while their replacements have obtained a GS–14 rating in the intervening years. Appellants allege that, since 1991, they have been denied favorable assignment to temporary "details" that would have helped them prepare for advancement to GS–13 positions.

A "detail" consists of an employee's temporary assignment to a position or set of duties without receiving an actual upgrade in pay or job status that would accompany a permanent promotion. Details are considered desirable to the extent they give employees an opportunity to gain experience relevant to positions to which they seek promotion. NADNI regulations governing the distribution of work details forbid any individual employee from holding a detail position for more than 120 days in any given year without being permanently reassigned to that position. In situations where employees possess the same degree of education, seniority, and positive work evaluation, the fact that one employee rather than another has previously been detailed to the same or a comparable position may weigh crucially in the determination of who ultimately is more deserving of promotion.

Appellants allege that NADNI routinely assigned employees to details as a means of preparing them for advancement to permanent positions when openings occurred. Appellants offered into evidence before the district court several examples of individuals, not within their protected class, who received promotions after first receiving favorable detail assignments.[1]

Appellants further allege that the manner in which these details were assigned routinely deviated from established NADNI procedures. To that end, appellants produced the testimony of Judith Groshek, a Director of Competency Management at NADNI from 1996 to 1997, who testified that supervisors at NADNI frequently failed to advertise available details and to properly record their assignment. In addition, appellants presented evidence that at least one white employee, David Williamson, had been assigned to a supervisory detail for two consecutive years (from April 1994 through November 1996) before

---

1. Specifically, appellants introduced evidence that Dale Vest, Alfred Jolly, and David Williamson were all non-competitively promoted to jobs at the GS–13 level after first being assigned to details that provided them with work experience relevant to those jobs. All three men are white, and all were alleged to have less seniority than appellants. Furthermore, appellants presented evidence that these details were assigned non-competitively. The district court made no findings regarding the sufficiency of appellants' proof in setting forth these allegations, and appellee does not challenge these allegations before our court.

receiving a permanent promotion to a GS–13 position. Appellants allege that, as a consequence of being denied access to such details, they were prevented from obtaining promotions.

In 1995, NADNI underwent yet another reorganization, requiring numerous reassignments of personnel and the elimination of several positions. In June 1996, appellants contend that management awarded two promotions on a non-competitive basis to persons not within their protected class. These alleged promotions filled the positions of Deputy Planning Manager and Program Manager. Appellee denies that appellants were qualified for these positions, since the positions were designated as GS–13 positions and no plaintiff held GS–13 status. Furthermore, appellee denies that these positions were assigned through non-competitive promotions; rather, appellee alleges that the 1996 reassignments were merely personnel actions intended to document the effects of the reorganization that had occurred over a year earlier, and not promotions at all. In any case, it was these alleged promotions that prompted appellants to file their official charges of racial discrimination with the EEOC.

Appellants made initial contacts with an EEO counselor on June 20, 1996, and, by September 27, 1996, they had filed their formal charges with the EEOC. In those charges, they raised allegations of discrimination with regard to both the June 1996 promotions and the prior assignment of details stretching back to 1991. Appellants alleged disparate treatment by a pattern or practice of discrimination which systematically excluded black males from supervisory positions through the discriminatory allocation of details and promotions.

In December 1996, the EEOC issued a Notice of Acceptance letter, reporting that appellants' allegations of discrimination regarding their non-selection for the Deputy Planning Manager and Program Manager positions in June 1996 had been accepted for investigation. However, the EEOC requested additional information about appellants' other claims. On March 18, 1997, the EEOC issued its Notice of Amended Acceptance, reaffirming its decision to investigate the events of June 1996. The EEOC then indicated that appellants' allegations regarding an ongoing discriminatory policy in detail assignments and promotions extending between October 1991 and September 1996 would only be investigated as background to the June 1996 events.

In 1997, NADNI advertised five positions at the GS–13 level, and although all four appellants made applications, none were promoted. Several white male recipients of these promotions were also beneficiaries of pre-selection details that facilitated their permanent advancement to these positions.[2] Over the course of applying for a promotion to a GS–13 position from October 1996 to March 1997, appellant Lyons received reports from a NADNI staffing representative that he was among the "best qualified" applicants for the positions that he sought. However, he was never selected for any of these positions. Appellant Tate's name appears on a list of the top fifteen percent of candidates

2. For example, appellants allege that Dale Vest, see supra note 1, was a beneficiary of non-competitive details who obtained promotion through the competitive process followed in 1997. We note that two of these positions were given to African American applicants (one male and one female). Both of these individuals possessed college degrees and far less experience or seniority than any of the appellants. Appellants complain that NADNI supervisors unfairly assigned greater weight to college education, even though federal administrative regulations do not support such a weighting system for highly skilled positions at the GS–12 level and above where experience is generally required.

for the position of Program Superintendent, but he also was not promoted.

Appellants filed the current action in federal district court on April 10, 1998, alleging that they had been subjected to disparate treatment because of their race and that they had suffered retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1); 42 U.S.C. § 2000e–3(a). Tate additionally alleges that he was discriminated against in retaliation for filing an EEOC charge and for his participation in the present action when his supervisor, in August 1996 and then again in September 1998, presented him with a "fully successful"[3] performance evaluation. Appellee moved for summary judgment, and the district court issued an order granting summary judgment against appellants on each of their claims. Appellants now appeal.

## II. STANDARD OF REVIEW

 We review the district court's order granting summary judgment *de novo*. *Strahan v. Kirkland*, 287 F.3d 821, 825 (9th Cir.2002). We "must determine, viewing the evidence in the light most favorable to the nonmoving party, whether the district court correctly applied the relevant substantive law and whether there are any genuine issues of material fact." *Balint v. Carson City*, 180 F.3d 1047, 1050 (9th Cir. 1999) (en banc).

## III. DISCUSSION

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The employer is also prohibited "from retaliating against an applicant for employment because the applicant has opposed any unlawful employment practice, or has made a charge, testified, assisted, or participated in an employment discrimination investigation or proceeding." *Lam v. Univ. of Hawai'i*, 40 F.3d 1551, 1558–59 (9th Cir. 1994) (citing 42 U.S.C. § 2000e–3(a)). We must decide (1) whether appellants have exhausted their administrative remedies with regard to challenged conduct occurring after the filing of their EEOC charge; (2) whether appellants are permitted to pursue claims, or otherwise to introduce evidence, based on conduct occurring outside the statutory limitations period; and (3) whether appellants have presented sufficient evidence to command reversal of summary judgment and remand for trial on their remaining disparate treatment and harassment claims.

A. *The administrative exhaustion requirement as applied to appellants' 1997 promotion claims*

 To establish federal subject matter jurisdiction, a plaintiff is required to exhaust his or her administrative remedies before seeking adjudication of a Title VII claim. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir.2002); *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th

---

**3.** A "fully successful" performance rating is the equivalent of a satisfactory or average rating under NADNI policy. According to an internal memorandum distributed to NADNI supervisors and placed into evidence by appellants, a "fully successful" rating carries the following meaning: "Work accomplishments are of good quality. The individual produces the expected quantity of work. Results are in consonance with policy and schedules on work completion are met." Appellant Tate does not dispute the meaning of the rating, only whether he indeed deserved it, as opposed to a more exemplary rating, and whether this allegedly undeserved rating was given to him in retaliation for his EEOC filings.

Cir.1994). Exhaustion of administrative remedies under Title VII requires that the complainant file a timely charge with the EEOC, thereby allowing the agency time to investigate the charge. *See* 42 U.S.C. § 2000e–5(b); *see also B.K.B.,* 276 F.3d at 1099.[4] "Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." *Green v. Los Angeles County Superintendent of Sch.,* 883 F.2d 1472, 1475–76 (9th Cir.1989) (internal quotation marks omitted); *see also Anderson v. Reno,* 190 F.3d 930, 938 (9th Cir.1999) (stating that "forcing an employee to begin the administrative process anew after additional occurrences of discrimination in order to have them considered by the agency and the courts would erect a needless procedural barrier") (internal quotation marks omitted), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan,* —— U.S. ——, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Therefore, we must conclude that the district court erred in denying jurisdiction over appellants' 1997 claims of discriminatory failure-to-promote "if [those claims] fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination." *Farmer Bros.,* 31 F.3d at 899 (internal quotation marks and citation omitted) (emphasis in original).

The district court reasoned that the EEOC investigation of appellants' charges would not have included the 1997 allegations because those allegations concerned promotion to the GS–13 level rather than to particular jobs, and the EEOC would therefore not have been on notice that appellants' allegations of discrimination concerned the appellee's failure to promote them to *any* position at the GS–13 level or above. Because we find the district court's interpretation of appellants' EEOC charges excessively narrow and over-technical, we reject its conclusion.

■■■ We are required to construe appellants' EEOC charges " 'with utmost liberality since they are made by those unschooled in the technicalities of formal pleading.' " *B.K.B.,* 276 F.3d at 1100 (citing *Kaplan v. Int'l Alliance of Theatrical & Stage Employees,* 525 F.2d 1354, 1359 (9th Cir.1975)). We will consider a plaintiff's claims to be reasonably related to allegations in the charge "to the extent that those claims are consistent with the plaintiff's original theory of the case," *B.K.B.,* 276 F.3d at 1100, as reflected in the plaintiff's factual allegations and his assessment as to why the employer's conduct is unlawful.

■■ Appellants claimed in their EEOC charges that NADNI had "intentionally engaged in the systematic elimination of Black Males from the GS–13 and GS–14 levels of management" by denying qualified candidates selection for promotion and favorable details. In addition, appellants charged that they had been denied the opportunity to compete for two managerial positions to which promotions were awarded in June 1996. Appellants' 1996 EEOC charges did not include allegations of discrimination relating to NADNI's 1997 competitive promotions, nor could they possibly have done so. Nevertheless, the factual allegations recorded in appellants' EEOC charges reflect their original theory of the case: (1) that NADNI discriminated against them over the course of several

---

4. As discussed in greater detail in Section III.B., federal employees are further required to consult with an EEO Counselor within 45–days of the alleged discriminatory incident as a condition precedent to filing a formal charge, in order to give the governmental agency an opportunity "to informally resolve the matter." 29 C.F.R. § 1614.105(a).

years by denying them favorable details; (2) that, because they had been denied those details, they were disadvantaged in terms of their ability to obtain promotion to positions higher than GS–12; and (3) that NADNI had discriminated against them by issuing promotions to two specific GS–13 positions on a noncompetitive basis. On these facts, any additional EEOC investigation regarding the 1997 promotions would have been redundant because the appellants clearly articulated in their charges their theory that the appellee had systematically restricted the access of African–American employees to positions at the GS–13 level or above. The district court's conclusion to the contrary is in error.

B. *Appellants' pre-limitations period allegations*

　　1.　Appellee's liability for time-barred acts

▇▇▇▇ Appellants seek damages in compensation for an alleged pattern of discriminatory acts extending back to 1991. Under federal regulations promulgated by the EEOC, federal employees complaining of discrimination by a governmental agency "must consult a[n EEO] Counselor prior to filing a complaint in order to try to informally resolve the matter," 29 C.F.R. § 1614.105(a), and they "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory," 29 C.F.R. § 1614.105(a)(1).[5] Although it does not carry the full weight of statutory authority, failure to comply with this regulation has been held to be fatal to a federal employee's discrimination claim. *See, e.g., Johnson v. United States Trea-*

*sury Dept.*, 27 F.3d 415, 416 (9th Cir.1994) (per curiam) (affirming summary judgment based on plaintiff's failure to seek counseling before one year after the alleged incident of discrimination). Because appellants initially contacted an EEO counselor on June 20, 1996, we hold that appellants' claims arising out of incidents occurring before May 7, 1996 are time-barred.

The district court also ruled that the pre-limitations period claims were time-barred because it found that appellants failed to establish that the alleged discriminatory assignment of details formed part of a continuing violation that remained ongoing during the 45–day period. Appellants contest that ruling, but the question whether the district court committed error in its interpretation of our doctrine is no longer relevant due to an intervening decision by the Supreme Court overruling prior Ninth Circuit authority. *See Nat'l R.R. Passenger Corp. v. Morgan,* — U.S. —, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), *aff'g in part and rev'g in part Morgan v. Nat'l R.R. Passenger Corp.*, 232 F.3d 1008 (9th Cir.2000). In reviewing whether the district court properly granted summary judgment against appellants' claims based on the appellee's discriminatory allocation of details outside the limitations period, we are bound to apply current Supreme Court law.

▇▇▇▇ In *Morgan*, the Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," 122 S.Ct. at 2072, while "a hostile work environment claim ... will not be time barred so long as all acts

---

**5.** This deadline constitutes an administrative "requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (referring generally to the limitations period filing requirement under

Title VII); *see also* 29 C.F.R. § 1614.105(a)(2) (stating that the complainant will not be required to comply with filing period if he can show "that he ... was not notified of the time limits and was not otherwise aware of them"). Appellants have made no case for equitable tolling here.

which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period," [6] *id.* at 2077. Abner J. Morgan, Jr., brought claims of disparate treatment, retaliation, and hostile work environment racial harassment against Amtrak, alleging *inter alia* that he was repeatedly denied training opportunities, subjected to unwarranted disciplinary action, and unlawfully discharged. The district court granted summary judgment against Morgan's claims arising from allegations that occurred outside the limitations period, concluding that " '[b]ecause Morgan believed that he was being discriminated against at the time that all of these acts occurred, it would not be unreasonable to expect that Morgan should have filed an EEOC charge on these acts before the limitations period on these claims ran.' " *Morgan,* 232 F.3d at 1015 (quoting unpublished district court disposition). Morgan went to trial and lost on his remaining claims. We reversed the district court, holding that "[i]n light of the totality of the circumstances . . . the pre-limitations conduct at issue . . . [was] sufficiently related to the post-limitations conduct to invoke the continuing violation doctrine." *Id.* at 1016.

The Supreme Court's decision in *Morgan* invalidated our previous application of the continuing violation doctrine to discrete acts of discrimination and retaliation. Our ruling in the case had reversed summary judgment on the ground that Morgan had raised a genuine issue of fact as to whether a serial violation existed, linking the employer's pre- and post-limitations conduct. *Morgan,* 232 F.3d at 1017–18.

We did not consider whether the employer had engaged in a systematic policy or practice of discrimination, and, as a consequence, the Supreme Court's decision did not directly overrule our construction of the latter theory. However, it did not specifically endorse that theory either. *See, e.g., Morgan,* 122 S.Ct. at 2069, 2072–73 (mentioning the "systematic" theory of continuing violation but making no ruling as to its viability). Instead, the Court elaborated a set of general principles regarding how courts ought to apply the Title VII filing deadlines.

■■■■■ Pointing to the mandatory language of the statute, the Court reasoned that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Id.* at 2070 (internal quotation marks and citation omitted). Dismissing the respondent's argument that Title VII's protection against unlawful employment "practices" provided a statutory basis for our continuing violation doctrine, the Court clarified that it "interpret[s] the term 'practice' to apply to a discrete act or single 'occurrence,' even when it has a connection to other acts." *Id.* at 2071. The Court emphasized that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify," *id.* at 2073, and thereby concluded that "[e]ach incident of discrimination . . . constitutes a *separate* actionable 'unlawful employment practice,' " *id.* (emphasis added). We must conclude from the Court's statements that when, as in the present case, a plaintiff pursues several disparate treatment claims, based

**6.** The Court's decision in *Morgan* pertained to the statutory requirement that a plaintiff (not including a federal employee) must file a charge within "one hundred and eighty days after the unlawful employment practice occurred" if filing directly with the EEOC, 300-days if filing with a state agency possessing the authority to process and remedy such claims under state law. 42 U.S.C. § 2000e–5(e). Although the circumstances in which 29 C.F.R. § 1614.105(a)(1) may be equitably tolled are no doubt broader than the tolling opportunities under the statute, we find that the mandatory nature of the federal regulation is sufficient to warrant full application of the *Morgan* rule.

on discrete discriminatory acts, the limitations period will begin to run for each individual claim from the date on which the underlying act occurs.[7] If a plaintiff chooses to bring separate claims based on each discriminatory act, his assertion that this series of discrete acts flows from a company-wide, or systematic, discriminatory practice will not succeed in establishing the employer's liability for acts occurring outside the limitations period because the Supreme Court has determined that each incident of discrimination constitutes a separate actionable unlawful employment practice.[8]

The Supreme Court declined to decide whether the filing limitations period should run, in all cases, from the time that the challenged act occurred or, in certain circumstances, from the time that the plaintiff became, or should have become, aware that the employer's conduct was discriminatory.[9] *See Morgan,* 122 S.Ct. at 2073 n.

7. This does not mean that claims based on discriminatory policies initiated outside the limitations period will be foreclosed. *See Morgan,* 122 S.Ct. at 2072 (stating that the existence of past discriminatory acts "does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed"). Following *Morgan,* when a plaintiff alleges a systematic violation, each individual act of discrimination occurring within the limitations period may form the basis of an actionable claim, even if the discriminatory policy was initiated outside the limitations period. *Cf. Bazemore v. Friday,* 478 U.S. 385, 395, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986) (per curiam) (holding, in a pattern-or-practice case, that plaintiffs may challenge a discriminatory salary structure initiated before the Act became applicable to public employees, because "[e]ach week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII").

8. We do not mean to suggest that after *Morgan* the same plaintiff would be precluded from bringing a class-wide pattern-or-practice claim based on a series of discrete acts, including, for example, separate incidents of an employer's failure-to-train and failure-to-promote the plaintiff because of his membership in a protected class. In *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the Supreme Court held that the government successfully proved its case of pattern-or-practice discrimination based on the employer's "refusal to recruit, hire, transfer, or promote minority group members on an equal basis with white people," *id.* at 335, 337, 97 S.Ct. 1843. The Court noted in *Morgan* that it "ha[d] no occasion [ ] to consider the timely filing question with respect to 'pattern-or-practice' claims brought by private litigants." *Morgan,* 122 S.Ct. at 2073 n. 9. Therefore, the question of how Title VII's filing deadlines should be applied to pattern-or-practice claims based on a series of discriminatory acts, some of which occurred outside the limitations period, has been left unanswered by the Court, and we do not consider it here.

The district court interpreted appellants' claims as separate causes of action for disparate treatment and ruled on each one individually. Nevertheless, appellants have produced substantial evidence of the kind typically used to prove a pattern or practice of discrimination. *See, e.g., Int'l Bhd. of Teamsters,* 431 U.S. at 337–38, 97 S.Ct. 1843 (discussing the government's combined use of statistical evidence and testimony from individual protected class members to prove pattern-or-practice discrimination); *see generally* 1 Lex K. Larson, *Employment Discrimination* § 9.03[1], at 9–13 (2d ed.2002) (stating that plaintiffs will typically rely upon statistical evidence of the employer's "past treatment of the protected group" and "testimony from protected class members detailing specific instances of discrimination" to establish a pattern or practice of intentional discrimination). In light of intervening Supreme Court authority affecting this case and our partial reversal of summary judgment, the district court should consider whether to exercise its discretion to allow appellants to amend their complaint to include a pattern-or-practice claim.

9. The Court in *Morgan* acknowledged that "[t]here may be circumstances where it will be difficult to determine when the time period should begin to run." 122 S.Ct. at 2073 n. 7. Because Morgan "believed that he was being

7; *see also id.* at 2073–74 & n. 11 (rejecting the Seventh Circuit's notice requirement as applied to harassment claims). Here, appellants do not claim that they only became aware of the discriminatory nature of the detail assignments running from 1991 through 1995 as a consequence of the 1996 and 1997 promotions. Therefore, we need not resolve this ambiguity; we simply count backward 45 days from their initial contact with the EEO counselor.

 We hold that appellants' pre-limitations period claims, based on the alleged discriminatory assignment of details, are time-barred for the reasons set forth by the Supreme Court in *Morgan.* A discriminatory practice, though it may extend over time and involve a series of related acts, remains divisible into a set of discrete acts, legal action on the basis of each of which must be brought within the statutory limitations period. We must now determine whether and to what extent appellants can make use of evidence of discrimination occurring before the limitations period in order to prove that the appellee discriminated against them in awarding the challenged 1996 and 1997 promotions.

### 2. Relevance of evidence of time-barred acts to appellants' timely claims

 Our inquiry under *Morgan* does not end with the rejection of appellants' continuing violation argument. We must consider in addition what relevance appellants' evidence of time-barred discriminatory acts may have to the prosecution of their timely disparate treatment claims. The Supreme Court instructed in *Morgan* that

> The existence of past acts and the employee's prior knowledge of their occurrence ... does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. *Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.*

*Id.* at 2072 (emphasis added). Thus, even if appellants were aware that the appellee had violated their rights through the prior discriminatory assignment of details, their timely failure to-promote claims are not barred. In fact, appellants are permitted to offer evidence of the pre-limitations discriminatory detail assignment scheme in the prosecution of their timely claims.

discriminated against at the time that all these acts occurred," *id.* (internal quotation marks and citation omitted), a majority of Court declined to decide "whether the time begins to run when the injury occurs as opposed to when the injury reasonably should have been discovered," *id.* Justice O'Connor, joined by Chief Justice Rehnquist and Justice Breyer in a separate opinion, that "some version of the discovery rule applies to discrete-act claims." 122 S.Ct. at 2078 (O'Connor, J., concurring in part and dissenting in part).

As the Court noted, we did not decide on what precise date the limitations period should begin to run because we held that the continuing violation applied to his pre-limitations claims. 122 S.Ct. at 2073 n. 7. We had previously held that "[t]he proper focus is upon the time of the discriminatory acts, not

upon the time at which the consequences of the acts became most painful." *Abramson v. Univ. of Hawaii,* 594 F.2d 202, 209 (9th Cir. 1979). Like the Supreme Court in *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), we decided that the plaintiff's tenure rejection, though not a final termination, was the proper action from which the limitations period should run because the plaintiff's final termination was an inevitable consequence of the tenure decision, *Abramson,* 594 F.2d at 209–10; *accord Ricks,* 449 U.S. at 257–58, 101 S.Ct. 498. While *Abramson* drew a sharp line between the act and any injury it causes, it did not resolve the more subtle question of when the date of a plaintiff's notice that the act was discriminatory, and not the date of the act's occurrence, should be preferred.

The Supreme Court first announced the latter rule in *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), where it held that a female flight attendant, forced to resign after marrying, could not establish a continuing violation claim reaching back to her forced resignation based on the fact that the airline rehired her (within the statutory limitations period) without reinstating her previous seniority. *Id.* at 557–58, 97 S.Ct. 1885. The Court acknowledged that United's seniority system had a continuing effect on the plaintiff's pay and benefits. *Id.* at 558, 97 S.Ct. 1885. However, the Court reasoned that "the emphasis should not be placed on mere continuity; the critical question is whether any present violation exists." [10] *Id.* The Court asserted that "[a] discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed." *Id.* Based on that rationale, the Court concluded that "a challenge to a neutral [seniority] system may not be predicated on the mere fact that a past event which has no present legal signifi-

cance has affected the calculation of seniority credit, even if the past event might at one time have justified a valid claim against the employer." *Id.* at 560, 97 S.Ct. 1885.

■ Of particular significance to the present case, the *Evans* majority indicated that a discriminatory act for which the employer's liability is time-barred "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue." [11] *Id.* at 558, 97 S.Ct. 1885. In the wake of *Morgan*, we must decide how courts should determine what particular evidence of time-barred acts may be taken into account as "background" evidence of present, actionable discrimination. Previously, under our continuing violation doctrine, we required a plaintiff, seeking to demonstrate that the past violation continued into the present, to show that pre-limitations period acts were reasonably, or "plausibly," related to acts occurring within the limitations period. *Morgan*, 232 F.3d at 1015; *Sosa v. Hiraoka*, 920 F.2d 1451, 1455–56 (9th Cir. 1990). That test tended to limit the plain-

---

**10.** The Court revisited this reasoning in *Ricks*, where it concluded that a plaintiff may not recover for a pre-limitations period tenure decision by claiming the subsequent termination as a present effect because "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." 449 U.S. at 257, 101 S.Ct. 498.

**11.** Prior to *Morgan*, the *Evans* rule was overshadowed (and its application substantially curtailed) by the availability of the continuing violation doctrine. *See, e.g., O'Rourke v. City of Providence*, 235 F.3d 713, 731–32 (1st Cir. 2001) (holding that the district court erred by vacating judgment on the basis of improperly admitted evidence of pre-limitations acts, because "the evidence was necessary to prove a continuing violation," but declining to decide its admissibility under *Evans* ); *see also Anderson*, 190 F.3d at 936 (noting the *Evans* rule in passing, while holding that plaintiff's

claims were timely under the continuing violation rule); *EEOC v. Local 350, Plumbers & Pipefitters*, 998 F.2d 641, 644–45 (9th Cir. 1993) (distinguishing *Evans* on the theory that its rule only applies to facially neutral policies). In fact, the Court's instruction in *Evans* that "the critical question is whether any present violation exists," 431 U.S. at 558, 97 S.Ct. 1885, was interpreted by the circuit courts as the bedrock principle for the continuing violations doctrine, *see, e.g., Freeman v. Madison Metro. Sch. Dist.*, 231 F.3d 374, 381 (7th Cir.2000) (citing to *Evans* for the "well-established" proposition "that a Title VII plaintiff may recover for acts beyond the limitations period if she can demonstrate that such acts were part of a 'continuing violation' "); *Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757, 760 (9th Cir.1980) (construing *Evans* merely to have "defined the nature of continuing violations" by clarifying that "continuing *impact* from past violations is not actionable") (emphasis in original).

tiff's ability to introduce untimely acts by requiring specific showings that "related" discriminatory acts were perpetrated by a consistent group of actors against a particular plaintiff, or group of plaintiffs, and that the acts were similar in kind. *See, e.g., Sosa,* 920 F.2d at 1455–56. We held that evidence of acts that were "isolated, sporadic, or discrete" would not demonstrate a continuing violation. *See Morgan,* 232 F.3d at 1015. However, we conclude that, because it was formulated as a means to determine when to extend liability rather than what evidence is probative of discrimination, our prior reasonable-relation test does not provide an appropriate means to determine the admissibility of evidence of time-barred acts after *Morgan.*

■■■■■ We begin instead with the Court's statement in *Evans* that untimely evidence of the employer's discriminatory acts "may constitute *relevant* background evidence in a proceeding in which the status of a current practice is at issue." 431 U.S. at 558, 97 S.Ct. 1885 (emphasis added). "Relevant evidence" is defined by Rule 401 of the Federal Rules of Evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R.Evid. 401. In the context of a racial disparate treatment claim, admissible background evidence must be relevant to determine "the ultimate question: whether . . .'the defendant intentionally discriminated against [the plaintiff]' because of his race." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). This determination will not impose the same limitations on the plaintiff's evidence as were previously imposed under our reasonable-relation test.[12] The district court will sometimes be required to engage in Rule 403 balancing when determining the admissibility of evidence of time-barred acts, Fed.R.Evid. 403 (stating that otherwise relevant evidence may be excluded if its probative value is substantially outweighed by its potential for unfair prejudice or confusion of the issues), bearing in mind that, in discrimination cases, probative evidence of wrongful intent will necessarily prejudice the defendant's case.[13] At

**12.** For example, applying our prior reasonable-relation test to a typical race-based failure-to-promote claim, we would have barred evidence occurring outside the limitations period that the employer had rejected, on the basis of race, candidates for promotion other than the plaintiff. Such evidence would not have been probative of a continuing violation against the plaintiff himself. Plaintiffs have always been permitted to introduce such evidence when it is relevant to the question whether the employer intended to discriminate on the basis of race, provided that it satisfies the requirements of Rule 403 balancing. *See, e.g., Tennison v. Circus Circus Enters.,* 244 F.3d 684, 689–90 (9th Cir.2001). After *Morgan,* we will continue to view this evidence as probative of the employer's discriminatory intent, regardless of the fact that the employer had previously chosen a different victim. Similarly, under the continuing violation theory, a single derogatory racial remark made to the plaintiff by the employer or its agent would not have been admissible for the purpose of extending liability beyond the limitations period, because such a remark, standing alone, could not establish a continuing violation. After *Morgan,* courts may still admit such evidence not for the purpose of extending liability, but as relevant evidence of the employer's present discriminatory intent.

**13.** For example, in *Tennison v. Circus Circus Enterprises,* we held that the district court did not abuse its discretion by excluding testimony from plaintiffs' coworkers that they too were assaulted by plaintiff's accused sexual harasser prior to the period encompassing the plaintiffs' timely claims. 244 F.3d at 689–90. We found this testimony probative because it demonstrated that the employer had been on notice of the harasser's offensive behavior prior to plaintiffs' complaints and suggested that the employer's response to those complaints

the initial stage of a case of disparate treatment, appropriate background evidence will be evidence, either direct or circumstantial, that, when combined with evidence of the employer's present conduct, "give[s] rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089. Once the employer has proffered a legitimate, nondiscriminatory reason to rebut the plaintiff's *prima facie* case, appropriate background evidence will be any evidence that tends to prove the employer's discriminatory intent or otherwise to disprove the proffered legitimate reason. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1127 (9th Cir.2000).

 In support of their time-barred claims, appellants in the present action allege a pervasive pattern of racial discrimination at NADNI that eliminated African–American men from obtaining managerial positions above the GS–12 level by systematically denying them access to favorable details and to promotions. Appellants have supplied the names of several white-male workers who received favorable work details and were subsequently promoted to GS–13 positions. They allege that NADNI supervisors allocated details on a noncompetitive basis, routinely failed to publicize detail opportunities and held white employees in detail positions for substantially longer periods than were appropriate according to NADNI policy. The latter practice is particularly significant, because fewer black employees could be given the chance to benefit from favorable details while whites were being retained in those positions for longer than the official maximum of 120 days.[14] Appellants also entered into the record below EEO counselor reports, documenting the workforce participation rates of whites, blacks, Hispanics, and Asians, at NADNI, from 1991 to 1995 in GS–12, 13, and 14 positions. These reports show a steady decline in African–American workforce participation at the GS–13 level.[15]

Because appellants failed to make timely contact with an EEO counselor following any of their exclusions from detail assignments or denials of promotion prior to 1996, they are unable to sustain claims based on any of the foregoing evidence. However, this evidence is relevant as background and may be considered by the trier of fact in assessing the defendant's liability for plaintiffs' denials of promotion in 1996 and 1997. Appellants may not offer this evidence on the theory that past acts of discrimination, for which legal action is

was inadequate. *Id.* at 690. However, we upheld the lower court's ruling because we agreed that admission of this testimony might have resulted in a "mini-trial," causing inefficient use of the court's time and confusion of the jury by focusing the court's attention on "remote events ... instead of recent events concerning Plaintiffs." *Id.* Our ruling in *Tennison* supports our current conclusion that, after *Morgan*, the admissibility of evidence of discrete, time-barred acts of discrimination is controlled primarily by the Federal Rules of Evidence.

14. For example, appellants allege that David Williamson, a white employee at NADNI, occupied a managerial detail for over two years,

extending through the limitations period to the fall of 1996.

15. In 1991, African–Americans made up 5.4% of the GS–13 workers. Their participation rate fell to 3.8% of GS–13 workers in 1993 (i.e., 3 out of 80 positions) and to zero in 1995, when no black workers occupied GS–13 positions (though one black worker had achieved GS–14 status at that time). By contrast, the workforce participation of whites in GS–13 positions increased during the same period, from 81% in 1991 to 85.9% in 1995. Appellants did not introduce comparable evidence concerning work-force participation rates in 1996 and 1997.

now time-barred (e.g., discriminatory assignment of details), constitute a current violation simply because they continue to have a present effect. Consistent with the Supreme Court's ruling in *Evans*, appellants may not sustain a cause of action for relief from present injury caused by time-barred acts of discrimination. *See Evans*, 431 U.S. at 558, 97 S.Ct. 1885. However, appellants may offer the statistical evidence of NADNI's elimination of African-American employees from GS–13 positions, as well as evidence of the employer's violation of departmental policy in the course of maintaining white employees for excessively long periods of time in favorable detail positions, as indirect proof of the employer's intent to discriminate. This evidence may also be offered for its probative value in assessing whether the employer's justifications for its present conduct lack credibility.

### C. *Appellants' failure-to-promote claims*

■■■ To establish a prima facie case of disparate treatment under Title VII, a plaintiff must provide evidence that "give[s] rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089; *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997). Absent direct evidence of discrimination, a Title VII plaintiff may prove his case through circumstantial evidence, following the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Supreme Court held in *McDonnell Douglas* that the plaintiff can make out a *prima facie* case of discrimination by showing that (1) he belongs to a statutorily protected class, (2) he applied for and was qualified for an available position, (3) he was rejected despite his qualifications, and (4) after the rejection, the position remained available and the employer continued to review applicants possessing comparable qualifications. *Id.* at 802, 93 S.Ct. 1817. "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089. At the summary judgment stage, the "requisite degree of proof necessary to establish a *prima facie* case ... is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994); *accord Cordova*, 124 F.3d at 1148.

■■■ Once established, the *prima facie* case creates a rebuttable "presumption that the employer unlawfully discriminated against the employee." *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. The burden of production then shifts to the employer "to articulate a legitimate, nondiscriminatory reason for the plaintiff's rejection." *Warren v. City of Carlsbad*, 58 F.3d 439, 442 (9th Cir.1995). "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Burdine*, 450 U.S. at 255, 101 S.Ct. 1089.

■■■ If the employer sustains this burden, the plaintiff must then demonstrate that the proffered nondiscriminatory reason is merely a pretext for discrimination. *Id.* at 256, 101 S.Ct. 1089; *Warren*, 58 F.3d at 442. While the burden of persuasion remains at all times with the plaintiff, *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089, this final burden shift does not necessarily impose a new burden of production. In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court held that the factfinder may infer "the ultimate fact of intentional discrimination" without additional proof once the plaintiff has made out her *prima facie* case if the factfinder believes that the employer's

proffered nondiscriminatory reasons lack credibility, *id.* at 147, 120 S.Ct. 2097; *accord Chuang,* 225 F.3d at 1127 ("[A] disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons."). We have held, following *Reeves,* that the plaintiff can prove pretext either "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Id.* (quoting *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1220–22 (9th Cir.1998)). In addition, we look ultimately to the cumulative evidence, and so consider indirect with direct evidence to the extent that both are available. *Id.* "Circumstantial evidence of pretext must be specific and substantial in order to survive summary judgment." *Bergene v. Salt River Proj. Agr. Improv. & Power Dist.,* 272 F.3d 1136, 1142 (9th Cir.2001) (citing *Godwin,* 150 F.3d at 1222). However, we have held that "any indication of discriminatory motive ... may suffice to raise a question that can only be resolved by a factfinder," and for that reason "summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a Title VII dispute is the elusive factual question of intentional discrimination." *Warren,* 58 F.3d at 443 (internal quotation marks omitted).

### 1. 1996

■ The district court held that appellants failed to make out a *prima facie* case of discriminatory failure-to-promote arising out of their nonselection for the positions of Deputy Planning Manager and Program Manager in June of 1996, because they failed to produce evidence of their qualification. In order to make out a *prima facie* case, a plaintiff must produce some evidence, giving rise to an inference of discrimination. *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089. We have said that the amount of evidence required at summary judgment is "very little," *Sischo–Nownejad v. Merced Cmty. Coll. Dist.,* 934 F.2d 1104, 1111 (9th Cir.1991) (internal quotation marks omitted), and does not rise to the level of a preponderance of the evidence, *Wallis,* 26 F.3d at 889. A plaintiff's failure to offer evidence establishing a necessary element of his *prima facie* case will ordinarily be fatal to his claim. However, the district court erred in this case by discounting evidence that was sufficient to sustain appellants' burden.

■ Failure to produce evidence of qualification will typically prevent a plaintiff from satisfying either the second or the fourth prong of the *McDonnell Douglas* test. Here, appellants have satisfied the first prong of *McDonnell Douglas,* by establishing that, as African–Americans, they all belong to a protected class. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. They have also satisfied the third prong, by demonstrating that they suffered an adverse employment action (i.e., denial of promotion). *Id.* Appellee disputes whether any promotions took place, but we agree with the district court that a genuine issue of fact has been raised concerning whether the June 1996 assignments were indeed promotions. With regard to the fourth prong, it is undisputed that the positions at issue were filled by white employees of NADNI. Therefore, the only issue remaining concerning appellants' *prima facie* case is whether they have presented sufficient evidence from which the trier of fact could reasonably infer that they possessed the "minimum

qualifications" for the positions, *Laborde v. Regents of the Univ. of Cal.*, 686 F.2d 715, 717 (9th Cir.1982), or that their qualifications were comparable with those of the persons awarded the positions.

 The Supreme Court has cautioned that "[t]he prima facie case method established in *McDonnell Douglas* was 'never intended to be rigid, mechanized, or ritualistic.'" *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)); *see also Hicks*, 509 U.S. at 519, 113 S.Ct. 2742. To that end, we do not require that a plaintiff prove that he applied for an available position when making a failure-to-promote claim against the employer if the trier of fact could reasonably infer that promotions were not awarded on a competitive basis. *See Fadhl v. City and County of San Francisco*, 741 F.2d 1163, 1165–66 (9th Cir.1984) ("When an employer's discriminatory treatment consists of a failure to consider an applicant's qualifications, or in the use of evaluative criteria that are discriminatory, the applicant need not prove that he or she was qualified to fill the position sought in order to obtain some relief."), *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *see also Lockridge v. Bd. of Trustees of the Univ. of Ark.*, 294 F.3d 1010, 1014 (8th Cir.2002) (stating that "failure to apply is frequently excused where the employer has no formal application process or where the employee is unaware of the opportunity"), *reh'g granted*, 301 F.3d 958, 2002 WL 31004678 (8th Cir.2002); *Jones v. Firestone Tire & Rubber Co.*, 977 F.2d 527, 533 (11th Cir.1992) (holding that the plaintiff need not establish that he applied for an available position where the employer neither posted job openings nor accepted applications) (citing *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir.1984) (excusing plaintiff's failure to apply because "defendant used no formal procedures for posting notice of available promotions or for determining who would be offered the promotion [and instead] relied on 'word of mouth' and informal review procedures")).

 Further, where, as here, the employer has not published the qualifications for positions that were awarded without a competitive application process, it would be unreasonable to require a plaintiff to present direct evidence of the actual job qualifications as part of his *prima facie* case. *See Shannon v. Ford Motor Co.*, 72 F.3d 678, 682 (8th Cir.1996) ("It would be ironic ... if a victim of discrimination were unable to vindicate her rights because she had the peculiar misfortune of being discriminated against in a way that necessarily prevented her from making her prima facie case."). In such a circumstance, a plaintiff may satisfy the second prong of *McDonnell Douglas* by providing circumstantial evidence of his qualification for the position. For the purpose of establishing a *prima facie* case, the plaintiff is not restricted to providing the bare minimum of evidence required by the *McDonnell Douglas* test, but may rely also on other circumstantial evidence that tends to raise an inference of discrimination. *See Wallis*, 26 F.3d at 889 ("In offering a *prima facie* case, of course, a plaintiff may present evidence going far beyond the minimum requirements."); *see also McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. 1817 (stating that "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from [the plaintiff] is not necessarily applicable in every respect to differing factual situations"); *Cordova*, 124 F.3d at 1148 (stating that the *McDonnell Douglas* test provides "[o]ne way" to raise an inference of discrimination).

■ Appellants Lyons and Tate have demonstrated, as circumstantial evidence of their qualification, that they each held the position of Program Manager at NADNI prior to the 1991 reorganization. Appellee argues that the Program Manager position in 1991 differed materially from the position in 1996 because the latter required supervisory skills and a rating of GS–13. However, appellee has not explained how an employee's GS rating is relevant to his promotability; in fact, by conceding appellants' qualifications to apply for GS–13 positions in 1997, when no appellant held that rating, appellee undermines his own arguments with regard to the 1996 positions. In addition, we have recently held that, at summary judgment, a plaintiff's "self-assessment of his performance is relevant" in satisfying his minimal burden of showing qualification at the initial, *prima facie* case, stage of the *McDonnell Douglas* burden-shifting rationale. *See Aragon v. Repub. Silver State Disposal*, 292 F.3d 654, 660 (9th Cir.2002). Lyons and Tate allege that they have obtained experience, through their extended service at NADNI, performing many of the functions required by the Deputy Planning Manager and Program Manager positions, including the supervision of other employees.[16] While we do not rely on this evidence alone, we note it as relevant in combination with the other circumstantial evidence of qualification. We conclude based on this evidence that appellants Lyons and Tate have successfully raised a genuine dispute of fact as to whether they were sufficiently qualified for the Program Manager and Deputy Planning Manager positions. The district court's decision with regard to the remaining appellants' claims is affirmed, because the evidence regarding their employment experience fails to raise an inference that they were qualified for these positions. The burden now shifts to the employer to offer a legitimate nondiscriminatory reason for rejecting Lyons and Tate for promotion.

Appellee contends that the employees who received the disputed positions were previously GS–13s and were simply reclassified to these positions, without promotion, as part of a personnel reorganization at NADNI. The reason satisfies the employer's burden of production, requiring appellants to raise a genuine issue of fact as to whether the proffered reason is merely a pretext for discrimination.

■ In rebuttal, appellants have produced background evidence that the employer had previously maintained a discriminatory system of detail assignments that disadvantaged black employees by denying them work experience that would have facilitated their promotion to positions above the GS–12 level. First, appellants have produced statistical evidence that the employer's policies steadily removed African–American employees from GS–13 positions, resulting in their total removal from such positions in the year directly proceeding the challenged promotion decisions. *See McDonnell Douglas*, 411 U.S. at 805, 93 S.Ct. 1817 (indicating that "statistics as to [the employer's] employment policy and practice may be helpful to a determination" as to whether a particular action by the employer was discriminatory); *accord Warren*, 58 F.3d at 443. Appellants also point to statistical evidence that the appellee systematically eliminated black employees from GS–13

---

16. For example, Tate has provided affidavit testimony that he received experience qualifying him for a supervisory position while serving in various positions, including as a Foreman, Program Manager, Program Analyst, and Production Controller Supervisor. Lyons has testified that he received relevant experience while serving as a Program Manager and during a temporary promotion to GS–13 status.

positions in the mid–1990s. Second, appellants have produced the testimony of Judith Groshek in order to demonstrate that, as part of its discriminatory detail assignment system, the employer routinely ignored departmental procedures that were intended to protect workers' rights to obtain favorable work assignments on an equal basis.

A factual dispute exists as to how the 1996 positions were filled. Appellants' evidence discrediting the appellee's proffered legitimate reason is substantial and specific, showing that the employer subverted established procedures for assigning temporary details in order to prevent African-American employees from obtaining experience at positions above the GS–12 level just as appellants allege that the employer subverted established procedures for making promotions in 1996 for the same unlawful purpose. A reasonable trier of fact could infer that the employer decided not to assign the 1996 positions to appellants Lyons and Tate, both of whom had previously held a similar position at the GS–12 level, because it was motivated by discriminatory intent. Based on this evidence, we conclude that Lyons and Tate have successfully rebutted appellee's proffered legitimate reasons for denying them promotion to the Deputy Planning Manager and Program Manager positions. They may proceed to trial on these claims.

### 2. 1997

As discussed above, the district court dismissed appellants' failure-to-promote claims based on their applications for GS–13 positions in 1997 because it held that appellants failed to exhaust their administrative remedies with regard to these claims. Because we reverse that holding, we must address the merits of the appellants' claims.

Appellee does not dispute appellants' qualifications to occupy any of these positions. Instead, appellee argues that appellants cannot succeed in establishing a *prima facie* case because two of the five positions for which appellants competed were awarded to African-American applicants. In the alternative, appellee argues that it legitimately denied the appellants' applications because none of them was the most qualified for any of the available jobs.

With regard to appellee's first argument, proof that the employer filled the sought position with a person not of the plaintiff's protected class is " 'neither a sufficient nor a necessary condition' of proving a Title VII case," *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 454 n. 1 (7th Cir.1999) (quoting *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir.1996) (per curiam)), and it is not prescribed by the Supreme Court's original statement of the *prima facie* test, *see McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817 (stating that plaintiff may satisfy the fourth-prong of the *prima facie* case by showing "that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications"); *see also Burdine*, 450 U.S. at 253, 101 S.Ct. 1089 (stating that, at trial, the plaintiff "must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination"). We have held that *McDonnell Douglas* should be "read literally" to allow a plaintiff to establish a *prima facie* case of failure-to-promote discrimination "whenever the employer continues to consider other applicants whose qualifications are comparable to the plaintiff's after refusing to consider or rejecting the plaintiff," even where the employer fills the position with a member of the plaintiff's protected class. *Diaz v. Am. Tel. & Tel.*, 752 F.2d 1356, 1359 (9th Cir.1985).

 In the present case, whether the employer filled any particular position with a member of appellants' protected class is more properly considered as evidence produced by the employer to rebut an inference of discrimination rather than as evidence essential to appellants' *prima facie* case. However, even as rebuttal evidence it will not necessarily be dispositive. *See, e.g., Jones v. W. Geophysical Co. of Am.,* 669 F.2d 280, 284–85 (5th Cir.1982) (holding that plaintiff's affidavits that replacement worker was notoriously unreliable were sufficient to raise an inference of discrimination even though the replacement was a member of plaintiff's protected class). Indeed, proof that the appellee filled two of five positions with applicants from appellants' protected class does nothing to impede appellants' ability to raise an inference of discrimination with regard to the other three positions, though it may say something generally about the employer's motive.

All appellants were pre-qualified by the appellee as a condition of their eligibility to apply for the five positions at issue in 1997. Tate was listed by NADNI supervisors as one of the top fifteen percent of applicants for one of the positions, and Lyons received written notification from management that he was among the "best qualified" applicants in the pool. Appellee cannot reasonably argue with regard to any of the appellants that their qualifications were not comparable to the qualifications of other applicants for the position among whom management made its ultimate decision. Therefore, all appellants have succeeded in making out a *prima facie* case of failure-to-promote discrimination, shifting the burden to the employer to offer a legitimate reason for their rejection.

 Without indicating specific weaknesses in appellants' candidacies for promotion, appellee responds that appellants were not the best qualified applicants for any of the positions at issue. At summary judgment, "[o]ur place is not to weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial." *Glenn K. Jackson Inc. v. Roe,* 273 F.3d 1192, 1196 (9th Cir.2001). In such circumstances, whether appellants were as qualified as any of the promotion recipients is a factually intensive question best resolved by the jury. To rebut appellee's proffered nondiscriminatory reason for their denial of promotion, appellants present the employer's alleged discriminatory assignment of details as background evidence of an intention to discriminate against members of appellants' protected class. Appellee may respond to this evidence by pointing to the two African–American employees who received promotions to GS–13 level positions in 1997. However, while this evidence helps to frame the dispute over the appellee's employment practices, it does not resolve it. Appellants' statistical evidence of the employer's systematic removal of black employees from supervisory positions is probative evidence of discriminatory intent, resulting in a factual dispute as to whether the employer discounted any appellant's candidacy or ignored his qualifications because of race. Though we discuss that evidence more thoroughly in the previous section, we find it equally relevant to appellants' rebuttal of the employer's proffered reason here. A reasonable trier of fact could infer that the employer continued to discriminate against appellants because of their race, even though it acknowledged that two of them were among the best qualified applicants for the available positions.[17] Based on the forego-

17. This inference is strengthened by the tim-

ing of the promotions, which is several

ing evidence, appellants have succeeded in preserving a triable issue as to whether the appellee's reasons for denying them promotion in 1997 were pretextual.

### D. *Appellant Donald Tate's retaliation claim*

Tate alleges that the employer retaliated against him for filing an EEOC charge and civil complaint in the present action, as well as for filing prior EEOC charges, by awarding him a performance evaluation of "fully successful" on two separate occasions. According to appellee's own documentation, a performance rating of "fully successful" is the equivalent of an average, or mediocre, rating. Tate does not dispute this interpretation.

Under Title VII, it is unlawful for an employer "to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). In order to prevail on a claim of unlawful retaliation, a plaintiff must establish (1) that he engaged in a protected activity, (2) that he suffered an adverse employment decision, and (3) that there was a causal link between plaintiff's activity and the employment decision. *Hashimoto v. Dalton,* 118 F.3d 671, 679 (9th Cir.1997).

"Title VII does not limit its reach only to acts of retaliation that take the form of cognizable employment actions such as discharge, transfer, or demotion." *Id.* at 675 (internal quotation marks omitted). Furthermore, this Circuit has previ-

ously held a negative job reference sufficient to sustain a claim of retaliation where that reference was disseminated to another potential employer. *See id.* at 674–76. However, in the present case, appellee's alleged discriminatory conduct has not yet matured into an adverse employment decision sufficient to satisfy the requirements of the prima facie case.

In *Kortan v. California Youth Authority,* 217 F.3d 1104 (9th Cir.2000), we held that a performance evaluation that was mediocre (rather than "sub-average") and that did not give rise to any further negative employment action did not violate Title VII. *Id.* at 1112–13. Tate does not allege that NADNI management has either relied upon the "fully successful" evaluations in making a further employment decision adverse to Tate or published these evaluations by making them available to other potential employers. Furthermore, Tate does not allege that his mediocre evaluations were accompanied by any meaningful change in work assignments, either in the form of relieving him of responsibilities or saddling him with additional, burdensome tasks. *Cf. Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir.1987) (holding that "[t]ransfers of job duties and undeserved performance ratings, if proven, would constitute 'adverse employment decisions' cognizable under this section"); *see also Kortan,* 217 F.3d at 1113 (noting that *Yartzoff* concerned sub-average evaluations). Our precedent dictates that the evaluations at issue here do not rise to the level of an adverse employment action by the employer, and, as a result, Tate has failed to make out a *prima facie* case of unlawful retaliation.

months after appellants held their initial meeting with the EEO counselor. The trier of fact might infer that the employer's pro-

motion of two African–American candidates was intended to mask prior discriminatory employment practices.

## CONCLUSION

Following the Supreme Court's recent decision in *National Railroad Passenger Corp. v. Morgan,* — U.S. —, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), we affirm the district court's ruling that appellants' claims of disparate treatment arising out of detail assignments made prior to May of 1996 are time-barred. However, we reverse the court's summary judgment on appellants' timely failure-to-promote discrimination claims. We remand for trial on Lyons' and Tate's promotion claims, arising out of events occurring in 1996, and on all appellants' promotion claims arising out of the 1997 events. Appellants' evidence of discriminatory detail assignments occurring outside the limitations period cannot be used to sustain an independent cause of action for discrete acts of disparate treatment based on time-barred events, but appellants may offer it as relevant evidence of the employer's intent to discriminate both within the limitations period and following the filing of appellants' EEOC charges. We affirm the district court's summary judgment on Tate's retaliation claim. The court should award costs to the appellants.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. THE COURT SHALL AWARD COSTS TO THE APPELLANTS.**