NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| WALLACE R. BROWN, III,<br><br>              Plaintiff - Appellant,<br><br>   v.<br><br>DEPARTMENT OF PUBLIC SAFETY,<br>STATE OF HAWAII,<br><br>              Defendant - Appellee. | No. 09-17234<br><br>D.C. No. 1:08-cv-00470-JMS-<br>LEK<br><br>MEMORANDUM |

Appeal from the United States District Court
for the District of Hawaii
J. Michael Seabright, District Judge, Presiding

Argued and Submitted June 15, 2011[*]
Honolulu, Hawaii

Before: ALARCÓN, WARDLAW, and N.R. SMITH, Circuit Judges.

Wallace R. Brown, III appeals from the district court's order granting

summary judgment in favor of the State of Hawaii, Department of Public Safety

_____

   [*]This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

(the "Department") on Brown's claims of racial discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 (codified at 42 U.S.C. §§ 2000e-1 et seq). We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

Brown filed formal charges of Title VII violations with the EEOC asserting racial discrimination based on the use of the term "Operation Mandingo" by a subordinate on March 28, 2007, and a retaliation claim based upon his removal from a temporary assigned position on May 8, 2008.

I

Brown failed to demonstrate that, in connection to the "Operation Mandingo" incident, he suffered an adverse employment action. *See Davis v. Team Electric Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (To establish a prima facie case of disparate treatment, Brown must show that (1) he belongs to a protected class; (2) he was qualified for his position; (3) he was subjected to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably). Although "adverse employment action" is broadly defined, *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004), Brown did not present evidence that he suffered an adverse action with respect to the events surrounding the "Operation Mandingo" report. *See Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 970 (9th Cir. 2002) (a reduction in

2

base monthly pay is an adverse employment action); *University of Hawai'i Prof'l Assembly v. Cayetano*, 183 F.3d 1096, 1105-06 (9th Cir. 1999) (receiving pay a couple of days late constitutes substantial impairment); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (job transfers and undeserved performance ratings can be adverse employment decisions). Brown received favorable evaluations throughout his employment and was temporarily assigned to a higher position at an increase in salary after the "Operation Mandingo" incident.

## II

## A

Brown failed to file a formal EEOC charge as to his claim that certain members of the Department did not investigate his complaints of insubordination and rule violations by Department employees on 52 separate occasions between November 2002 and May 2007. These incidents were not similar to his claim that the "Operation Mandingo" report created a hostile working environment based on a single act of actual racial discrimination.

"Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are 'like or reasonably related to the allegations contained in the EEOC charge.'" *Green v. Los Angeles Cnty. Superintendent of Sch.*, 883 F.2d 1472, 1475-76 (9th Cir. 1989) (quoting *Brown v.*

3

*Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726, 729 (9th Cir. 1984)).

In response to the motion for summary judgment, Brown presented only his conclusions and speculation that the failure to investigate his claims was based on his race. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1121 (9th Cir. 2004) ("Under Title VII, an individual suffers disparate treatment when he or she is singled out and treated less favorably than others similarly situated on account of race.") (internal quotations and citations omitted). In opposing summary judgment, Brown "'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting Fed. R. Civ. P. 56(e)). Brown failed to present evidence in opposition to the Department's motion for summary judgment that the Department's alleged failure to investigate the 52 incidents of insubordination and rule violations was due to racially discriminatory treatment. He, therefore, failed to demonstrate that the incidents were "like or reasonably related to the allegations contained in the EEOC charge." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002) (internal quotations and citation omitted). Brown's counsel should have filed a third formal charge with the EEOC based on his claim that his superiors' failure to

4

investigate 52 acts of insubordination and rule violations complaints created a hostile working environment.

B

Brown also failed to demonstrate that the Department's failure to investigate created a severe or pervasive alteration of the condition of his employment. *See Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003) ("To determine whether conduct was sufficiently severe or pervasive to violate Title VII, we look at 'all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.") (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001)). Brown presented no evidence that the Department's alleged failure to investigate the 52 other incidents was due to racial discrimination. Further, Brown continued to receive favorable evaluations and was temporarily assigned to a higher position at an increase in salary while these events allegedly occurred. Accordingly, Brown has not demonstrated that the Department's alleged failure to investigate his other claims constituted severe or pervasive racial discrimination.

C

Furthermore, his attorney failed to exhaust his administrative remedies in

5

order to obtain a right to sue letter with respect to the 52 incidents which the Department allegedly failed to investigate. "Title VII claimants generally establish federal court jurisdiction by first exhausting their EEOC administrative remedies." *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990). The purpose of these procedures is to "afford[] the agency an opportunity to investigate the charge." *B.K.B.*, 276 F.3d at 1099. *See also Brown*, 732 F.2d at 729 ("Title VII places primary responsibility for disposing of employment discrimination complaints with the EEOC in order to encourage informal conciliation of employment discrimination claims and foster voluntary compliance with Title VII."). The court is "required to construe appellants' EEOC charges with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *Lyons v. England*, 307 F.3d 1092, 1104 (9th Cir. 2002) (internal quotation marks omitted). Similarly, "[i]n civil rights cases, where the plaintiff is *pro se*, we have an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt." *King v. Atiyeh* , 814 F.2d 565, 567 (9th Cir. 1987).

Here, Brown is not *pro se*. The June 30, 2008 letter was drafted by Brown's counsel, who is not "unschooled in the technicalities of formal pleading." *Lyons*, 307 F.3d at 1104. While the letter could, through liberal construction, be read to give *notice* to the EEOC to investigate these incidents, Brown's counsel did not

6

request that they be included in the scope of an investigation. Instead, she requested that a right to sue letter be issued immediately so that Brown could pursue his legal claims in court. Accordingly, the June 30, 2008 letter should not be liberally construed to be an amendment to the formal EEOC charge for discrimination. Brown failed to exhaust his administrative remedies as to all but his discrimination claims related to the use of the term "Operation Mandingo" on March 28, 2007.

III

Brown has failed to demonstrate that his removal from his temporary assignment to a higher-ranking administrator position was retaliation for the filing of his discrimination charge with the EEOC. He was given the temporary assignment with an increase in pay five months after he filed his discrimination charge with the EEOC. Brown was removed from the temporary position after the Hawaii Government Employees Association notified the Department that Brown's assignment violated the collective bargaining agreement. He was removed from the temporary position so that the warden could consider Brown and other qualified candidates to fill the position. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064-65 (9th Cir. 2002) ("To establish causation [between involvement in protected activity and an adverse employment action, a plaintiff]

7

must show . . . that engaging in the protected activity was one of the reasons for [his removal] and that but for such activity [he] would not have been [removed].").

Additionally, Brown has not demonstrated that the Department's "presumptively valid reasons for his [removal] were in fact a coverup for a racially discriminatory decision." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805 (1973).

AFFIRMED.

*Brown v. Department of Public Safety*, No. 09-17234

WARDLAW, Circuit Judge, dissenting:

Nearly five months before the EEOC notified Brown of his right to sue in federal court, Brown's counsel sent the Hawaii Civil Rights Commission a letter detailing fifty-two incidents where the Department of Public Safety failed to investigate complaints filed by Brown, while adequately investigating complaints filed by non-African American supervisors. Even though it is uncontested that the EEOC received a copy of this letter, the majority concludes that Brown did not exhaust his administrative remedies and that his counsel should have filed a third formal charge based on these additional incidents. Because the majority's holding is contrary to the purpose of Title VII's exhaustion requirement and our duty to construe Title VII charges liberally, I respectfully dissent.

As the majority itself notes, the purpose of Title VII's administrative exhaustion requirement is to "afford[] the agency an opportunity to investigate the charge." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002). Despite the Supreme Court's warning that "technicalities are particularly inappropriate in a statutory scheme [such as Title VII] in which laymen, unassisted by trained lawyers, initiate the process," *Love v. Pullman Co.*, 404 U.S. 522, 527 (1972), the majority concludes that Brown has failed to exhaust his administrative

1

remedies with respect to the fifty-two additional incidents of discrimination, even though Brown's attorney notified the EEOC about the fifty-two incidents in a timely supplemental letter.

**I.**

This letter constituted a *de facto* request to amend Brown's formal EEOC charge, even if the letter did not explicitly request an amendment to the formal charge. The applicable federal regulation permits amendment of EEOC charges:

> A charge may be amended to cure technical defects or omissions, including failure to verify the charge, *or to clarify and amplify allegations made therein*. Such amendment and *amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge* will relate back to the date the charge was first received.

29 C.F.R. § 1601.12(b) (emphasis added).

Brown's formal EEOC charge, which he filed pro se, alleged that Brown was subjected to "racial harassment" on March 28, 2007, and that the actions of Sgt. Melvin Kia'aina in using the term Operation Mandingo "created a hostile and offensive working atmosphere." The charge *also* explicitly alleged that the Warden failed to take appropriate corrective action in response to Brown's complaint arising from the "Operation Mandingo" incident:

> Warden Frank told *me* to write Sgt. Kia'aina a letter amounting to a Letter of Reprimand . . . I believe that no corrective action was taken,

2

> as there was no prompt and thorough investigation of my complaint. . . . I also believe that my employer's inaction has not deterred future racial harassment against me.

Our case law is clear that "[w]e are required to construe appellants' EEOC charges 'with utmost liberality since they are made by those unschooled in the technicalities of formal pleading.'" *Lyons v. England*, 307 F.3d 1092, 1104 (9th Cir. 2002) (citing *B.K.B.*, 276 F.3d at 1100). Given our duty to construe EEOC charges liberally, Brown's formal charge sufficiently alleged the existence of a hostile work environment based on the Warden's failure to take appropriate corrective action in response to Brown's complaint. Once Brown retained legal representation, his counsel sent the letter reporting fifty-two more incidents supporting Brown's hostile environment claim in order to "clarify and amplify," 29 C.F.R. § 1601.12, the allegations made in Brown's pro se charge.

To be sure, counsel's letter *should have* explicitly requested amendment of Brown's formal charge to include these additional incidents. The majority erroneously concludes that this technicality precludes Brown from showing that he has exhausted his administrative remedies.[1] However, the regulation does not set

---

[1]The majority concludes that Brown's counsel should have filed a third formal charge of discrimination with the EEOC based on these additional incidents. The majority fails to recognize that Brown could not file a third formal charge because the last incident mentioned in the letter occurred more than 300 days before the letter's date. These incidents, however, are timely when

3

forth a particular procedure that must be followed to amend a charge, and the clear purpose of the letter was to amend Brown's charge to include the "long history of complaints that were ignored while non-African American supervisor's complaints were investigated." Given that the purpose of the administrative exhaustion requirement is to ensure that the EEOC has the opportunity to investigate potential claims, this letter demonstrates that Brown exhausted his administrative remedies. Accordingly, the district court should have considered these fifty-two additional incidents when evaluating Brown's hostile work environment claim.

## II.

Further undermining the majority's adherence to phantom technicalities to deny Brown his day in court, Brown in fact exhausted his administrative remedies. Even without considering his counsel's supplemental letter, we have long held that a plaintiff exhausts his administrative remedies with respect to all allegations that are "'like or reasonably related to the allegations contained in the EEOC charge.'" *B.K.B.*, 276 F.3d at 1100 (citing *Green v. Los Angeles County Superintendent of Schs.*, 883 F.2d 1472, 1476 (9th Cir. 1989)). We have interpreted this as including

---

considered as part of Brown's initial charge. *See National RR Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").

"all allegations of discrimination that either 'fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination.'" *Id.* at 1100 (emphasis in original) (quoting *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994)). To determine whether new allegations are covered by the initial charge, "it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *Id.*

We must construe Brown's pro se charge liberally, and, so construed, the initial charge sets forth a hostile work environment race discrimination claim based on the Department's failure to respond to or investigate Brown's complaint. An "EEOC charge does not demand procedural exactness. It is sufficient that the EEOC be apprised, in general terms, of the alleged discriminatory parties and the alleged discriminatory acts." *Sosa v. Hiraoka*, 920 F.2d 1451, 1458 (9th Cir. 1990) (internal quotation marks omitted). An EEOC investigation would reasonably be expected to look into whether other specific incidents had contributed to the allegedly hostile working environment. *See, e.g. id.* at 1457 (holding that while the plaintiff's EEOC charge referenced a specific adverse employment action, the

5

charge also made general allegations of "intimidation, harassment, . . . disparate

treatment," and a "pattern and practice of retaliating," and that "[w]hen

investigating harassment and retaliation against [him], the EEOC could reasonably

have looked into" other incidents).

Moreover, all of the relevant factors indicate that these fifty-two incidents

are like or reasonably related to the initial charge. Unlike prior cases in which a

plaintiff attempted to set forth completely new grounds for discrimination with his

new allegations, *see Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) (holding

that an allegation of disability discrimination is not reasonably related to an EEOC

charge based on race, color, religion, sex, national origin, and/or age

discrimination), here, all of the allegations concern discrimination based on race.

Assuming that the acting Warden was responsible for investigating Brown's

complaints,[2] these additional allegations do identify the same individual, the

Warden, as the perpetrator of the discrimination. In addition, the alleged

discriminatory acts all occurred at the same place, the Correctional facility, and

they set forth a pattern of conduct beginning in 2002 and ending in May of 2007,

just two months after the discriminatory event specifically mentioned in the EEOC

_____

[2] The letter just refers to "Respondents" and does not indicate by name who
was responsible for investigating Brown's complaints.

6

charge.[3] It also bears noting that a plaintiff's claims are considered to "be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case." *Lyons*, 307 F.3d at 1105 (internal quotation marks omitted). The Defendants themselves conceded in their filings before the district court that the plaintiff's EEOC charge was based on a hostile work environment theory. Thus, even if Brown's counsel had not sent the supplemental letter, Brown has satisfied the administrative exhaustion requirement because the fifty-two additional incidents are like or reasonably related to the initial charge.

## III.

We have previously recognized that a overly technical application of the administrative exhaustion requirement "would falsify the Civil Rights Act's hopes and ambitions of providing a process lay people can use effectively to resolve discrimination complaints." *Sosa*, 920 F.3d at 1458 (alteration omitted) (internal quotation marks omitted). Here, the majority precludes Brown from pursuing his

---

[3] As recognized by the Supreme Court, hostile environment cases are based on conduct that occurs "over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *National RR Passenger Corp.*, 536 U.S. at 115. Thus it is perfectly appropriate that these additional instances of discrimination occurred during a five-year period.

7

hostile work environment claim, even though his counsel's letter informed the EEOC of the fifty-two additional incidents, and these incidents are like or reasonably related to his pro-se charge filed with the EEOC. The majority erroneously concludes that Title VII can be read in a hyper-technical manner as long as a Title VII plaintiff eventually acquires legal representation. This runs contrary to Title VII's broad remedial goal of removing "artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification." *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971).

I would reverse the district court's grant of summary judgment on Brown's hostile work environment claim, as the district court improperly failed to consider these additional incidents when evaluating the merits of this claim. The only reason that I do not request publication of the majority's disposition is that its unjust, overly technical, and legally erroneous rule should not be extended to any other potential victims of Title VII discrimination.