NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JOHN RODRIGUES, Jr.,

              Plaintiff-Appellant,

  v.

COUNTY OF HAWAII; SAMUEL JELSMA,

              Defendants-Appellees.

No. 20-15097

D.C. No. 1:18-cv-00027-ACK-WRP

MEMORANDUM*

Appeal from the United States District Court
for the District of Hawaii
Alan C. Kay, District Judge, Presiding

Argued and Submitted February 2, 2021
Honolulu, Hawaii

Before: CLIFTON, R. NELSON, and COLLINS, Circuit Judges.

Plaintiff John Rodrigues, Jr. appeals the district court's grant of summary

judgment dismissing his federal and state-law claims, arising from his arrest,

against Defendants County of Hawaii and Hawaii County Police Department

Major (formerly, Captain) Samuel Jelsma.  Reviewing de novo, *Lyons v. England*,

307 F.3d 1092, 1103 (9th Cir. 2002), we affirm.

---

* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

1. In his claims under 42 U.S.C. § 1983, Rodrigues alleges that, in causing his arrest for terroristic threats and weapons offenses,[1] Jelsma deprived him of (1) "his constitutional right to be free from arrest unsupported by warrant or probable cause under the Fourth Amendment"; and (2) his "federal right to carry and transport concealed weapons" under the Law Enforcement Officers Safety Act, 18 U.S.C. § 926C ("LEOSA"). The district court properly granted summary judgment against Rodrigues on these claims.

a. Where, as here, there was a single arrest for multiple offenses, the Fourth Amendment requirement of probable cause is satisfied if any *one* of the offenses was supported by probable cause. *Barry v. Fowler*, 902 F.2d 770, 773 n.5 (9th Cir. 1990). Rodrigues concedes that one of the offenses for which he was arrested was a charge of terroristic threatening in the first degree based on an incident involving Nathan Figueroa on January 27, 2016. We conclude that, at the time of Rodrigues's arrest later that same day, the officers had "'knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe'" Rodrigues had committed that offense. *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation omitted).

---

[1] Although Jelsma was not the arresting officer, Rodrigues alleges that Jelsma "directed all police investigations and resources to focus exclusively on arresting [Rodrigues]."

2

Under Hawaii law, "the offense of terroristic threatening" occurs, *inter alia*, when a person "threatens, by word or conduct, to cause bodily injury to another person . . . [w]ith the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person." HAW. REV. STAT. § 707-715. The offense constitutes "terroristic threatening in the first degree" when it is committed "[w]ith the use of a dangerous instrument or a simulated firearm." *Id*. § 707-716(1)(e). At the time of Rodrigues's arrest, the involved officers were aware that two individuals, Nathan Figueroa and Shannon Estocado, had come to the police station to report that Rodrigues had threatened Figueroa at his job site. Figueroa reported that a man whom he had never met before—but who he learned was the father of Keala, one of his coworkers (*i.e.*, Rodrigues)—got out of his truck with a pistol on his belt and a rifle strapped across his chest. According to Figueroa, Rodrigues told him "tell your friends they don't know who they [are] messing with" and that "he was a cop for twenty something years, you think I don't know what I [am] doing with this [firearm] and something to the effect that he [was] going [to] put one bullet in his head and nobody [was] going [to] find him." Figueroa reported that "at first, he felt threatened by [Rodrigues's] actions," but he ultimately realized Rodrigues "was not mad at him," but rather at one of his son's former coworkers. Estocado, a witness to the incident between Rodrigues and Figueroa, confirmed Figueroa's account. These facts were sufficient to establish probable cause that Rodrigues,

3

while visibly armed, had threatened to harm Figueroa with intent to terrorize him, and he was therefore properly arrested for committing a terroristic threat in the first degree.

Rodrigues argues that the incident involving Figueroa should not have been considered because his § 1983 complaint "only alleged violations of [his] constitutional rights" based on *other* charges arising from a second incident that occurred shortly after the one involving Figueroa. This contention fails because, as we have explained, Rodrigues's arrest was valid under the Fourth Amendment if any one of the charges underlying that arrest was supported by probable cause. *Barry*, 902 F.2d at 773 n.5. The fact that Rodrigues sought to challenge only other charges makes no difference.

Rodrigues also contends that probable cause was lacking because, as he puts it, the "Hawaii County Prosecutor's office felt that any threat to Figueroa was a 'conditional threat' and not a chargeable offense." The cited preliminary comment from the prosecutor's office, however, was not made until after the arrest had already occurred and, in any event, it did not undermine the existence of probable cause based on the facts that we have already set forth.

Because the officers had probable cause to arrest Rodrigues for terroristic threatening of Figueroa in the first degree, Rodrigues's Fourth Amendment rights

were not violated in connection with that arrest.[2]

b. Rodrigues's claim that his LEOSA-protected rights were violated by his arrest necessarily rests on the premise that his arrest on *firearms* charges was inconsistent with his rights under LEOSA. But as we have explained, Rodrigues's arrest was fully valid based solely on the separate charge of terroristic threatening, and Rodrigues does not contend that his arrest on *that* charge was inconsistent with LEOSA. Rodrigues's single arrest thus did not infringe on his LEOSA rights, regardless of whether or not he could properly have been arrested based only on the weapons charges.[3]

2. Because there was no underlying violation of Rodrigues's constitutional or statutory rights, his § 1983 claim against the County of Hawaii necessarily failed as well. *See City of Los Angeles v. Heller*, 475 U.S. 796, 798–99 (1986).

3. The district court did not err in granting summary judgment for Defendants on Rodrigues's state-law defamation and false light claims. Rodrigues argues that two allegedly defamatory media releases contain a "factually wrong"

---

[2] Because Rodrigues's arrest was supported by probable cause, his state-law claims for false arrest and for negligent investigation in connection with his arrest likewise failed as a matter of law.

[3] We therefore have no occasion to address whether Rodrigues is correct in contending that an individual's claimed rights under LEOSA are enforceable under § 1983. *See Carey v. Throwe*, 957 F.3d 468, 481 (4th Cir. 2020) (noting a split of authority on that issue).

statement "associating [Rodrigues] to an incident where shots were fired." The press releases refer to the second incident involving Rodrigues (*i.e.*, not his confrontation of Figueroa), and both of them say that the incident was "*initially reported* as 'gunshots fired'" but that the investigation indicated that "*no* shots" had been fired (emphasis added). There is no evidence that these statements were untrue. Indeed, Rodrigues himself had called 9-1-1 in connection with the second incident and had reported that he "believe[d] shots had been fired." Because the challenged statements were not false, Rodrigues's defamation and false light claims under Hawaii law failed as a matter of law. *See Nakamoto v. Kawauchi*, 418 P.3d 600, 615 (Haw. 2018) (noting that "truth is an absolute defense to defamation claims"); *id*. at 611 n.7 ("'[W]here a false-light claim is based on the same statements as a defamation claim, the false-light claim must be dismissed if the defamation claim is dismissed.'" (citation omitted)).

**AFFIRMED.**

6